J-S24043-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALEXANDER BROWN | : | |
| | : | |
| Appellant | : | No. 1492 EDA 2021 |

Appeal from the PCRA Order Entered June 30, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0014306-2013

BEFORE:  PANELLA, P.J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED AUGUST 29, 2022**

Alexander Brown (Brown) appeals *pro se* from the order entered in the Court of Common Pleas of Philadelphia County (PCRA court) denying his first petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.[1]  Brown claims that trial counsel was ineffective in cross-examining the victim and by ignoring evidence favorable to his defense in this assault case.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] While this is Brown's first PCRA petition, he waived his right to counsel and elected to proceed *pro se* following hearings pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998) in July 2018 and December 2021.

**I.**

**A.**

This case arises from an October 17, 2013 altercation between Brown and Elizabeth Hardaway (Hardaway) as she waited for a bus at about 1:30 p.m. on the corner of 39th and Market Street in Philadelphia. Hardaway was 74 years old at the time and she sustained a leg fracture during the incident. Police arrived at the scene in response to a 911 call and they arrested Brown, who had left the location, after Hardaway identified him as her assailant.

Brown waived his right to a jury trial and he and Hardaway were the sole witnesses at his October 2014 bench trial. Hardaway testified that as she waited for the bus, Brown approached her and called her a "whore" as he walked past her. (N.T. Trial, 10/06/14, at 14). When Hardaway asked Brown why he said this, he "grabbed me [by the hair] and he grabbed my head. And then I was standing against the wall and he hit my head one, two, three times . . . into the [brick] wall." (*Id.*). Hardaway hit Brown with her hands when he grabbed her, but she fell to the ground and her left leg "turned black and then I had to get an operation." (*Id.* at 16). Hardaway received treatment and rehabilitation services from three different hospital facilities and she was in a wheelchair for three weeks after the surgery. Hardaway testified that she had been "very sharp" mentally before the assault and had no health issues, but now experiences memory loss, pain in her left leg and swelling in her

hands. (*Id.* at 19). Hardaway could not remember how many surgeries she underwent on her leg.

Brown was represented by two attorneys from the Public Defender's Office at trial and Catherine Berryman, Esq., handled cross-examination of Hardaway. Hardaway explained that she has issues with her memory and that she does not recall testifying at the preliminary hearing. However, Hardaway did recall that she did not receive any cuts or bleeding from her head during the incident, that she did not lose any hair, and she indicated that despite certain gaps in her memory, she remembered the experience with Brown "very well." (*Id.* at 24). Hardaway was unable to recount the details of what happened after the fall and she did not remember giving a statement to police at the hospital the next day. Although Attorney Berryman walked Hardaway through her police statement, Hardaway did not recall giving the statement or signing it. Attorney Berryman also pointed out certain inconsistencies between Hardaway's prior statements and her trial testimony, including that Hardaway initially reported that Brown pressed his stomach against her during the incident. (*See id.* at 31-32).

Brown testified to a very different version of events and recounted that, as he approached Hardaway, he overheard her and another woman having a "very obscene conversation . . . using homophobic slurs like fag." (*Id.* at 39). Brown grimaced as he walked by, but did not speak. When Hardaway asked Brown why he was staring at her, he responded that he found their

conversation offensive and told her they "sounded like street whores talking that way." (*Id.* at 40). Hardaway then angrily approached him and called him a liar. When Brown asked Hardaway what she was going to do about it, she "immediately charged me. She ran at me." (*Id.* at 42). Brown acknowledged that he is 6-foot-4 and weighs 300 pounds, while Hardaway is 5-foot-4 and 100 pounds, and he recalled that when she charged at him, she bounced off of his stomach and he laughed. When Hardaway charged at him a second time and started slapping him in the face, he put his arm up to block her hands and attempted to retreat. Hardaway then "pursued me, and she grabbed me, and she started striking me in the face again." (*Id.* at 43-44). Brown pushed Hardaway once with his right hand and she immediately charged at him a third time. Brown was "afraid she would scratch my eye, so I pushed her again quickly" to stop her and she fell to the ground. (*Id.* at 45). Brown averred that he never threatened, punched or grabbed Hardaway's head, nor did he hit her head against a wall.

On cross-examination, Brown testified that although he wanted to remain at the scene until the police arrived, he left because bystanders who had observed the altercation made aggressive comments towards him, and he was concerned that the situation might escalate. (*See id.* at 53-54).

The parties stipulated to the admission of Hardaway's medical records showing that she sustained a fracture in her left leg and received associated treatment. The records also noted that there was no evidence of a scalp

wound, laceration, swelling or bleeding from Hardaway's head. (*See id.* at 54-55).

After considering the evidence and assessing the credibility of both witnesses, the trial court convicted Brown of aggravated assault, simple assault and reckless endangerment. On December 8, 2014, the court sentenced him to a term of 6 to 12 years of imprisonment followed by 8 years' probation. Brown filed a timely direct appeal but discontinued it in March 2015 in favor of pursuing collateral relief.

**B.**

Brown filed the instant timely *pro se* PCRA petition on March 27, 2015, contending that trial counsel was ineffective in cross-examining Hardaway and for failing to emphasize evidence that would have discredited her testimony. The PCRA court appointed counsel, who filed an amended petition requesting that Brown's direct appeal rights be reinstated *nunc pro tunc*.

The PCRA court held a hearing on Brown's petition on July 30, 2020, and was prepared to reinstate his direct appeal rights *nunc pro tunc*.[2] Brown was represented by stand-by counsel who concurred with this mode of relief, but Brown vehemently took the position that he did not want his direct appeal

---

[2] The protracted proceedings appear to be a result of Brown's refusal to be represented by counsel throughout the PCRA process, his requests for continuances, his numerous filings (48), in addition to those of stand-by counsel and delays caused by the Covid-19 pandemic.

rights reinstated and instead wanted a ruling on his PCRA claims. Brown explained that he is 6-foot-4 and 300 pounds, that Hardaway was "a little brittle woman," and he asserted that his "claim of ineffective assistance is based on the validity of the witness's claim that she got punched in the face." (N.T. PCRA Hearing, 7/30/20, at 19, 23). Brown maintained that Attorney Berryman neglected to cross-examine Hardaway effectively because she failed to point out inconsistencies between Hardaway's trial testimony and the statement she gave to police/preliminary hearing testimony. Brown also contended that counsel should have emphasized that Hardaway had "no injuries to her face, to her neck, or her head" . . . and was "not a credible witness." (*Id.* at 26, 40). The Commonwealth countered that trial counsel did cross-examine Hardaway extensively and "as strenuously as could possibly be done without antagonizing the fact finder" and that Brown's claim that Attorney Berryman should have been more adversarial with the elderly victim was "absurd." (*Id.* at 16, 36).

After further consideration of the record, the parties' briefs and Brown's responses to its Rule 907[3] notice, the PCRA court dismissed Brown's PCRA petition on June 30, 2021. Brown filed this timely appeal and he and the PCRA court complied with Rule 1925. **See** Pa.R.A.P. 1925(a)-(b). In its opinion, the PCRA court observed that Brown's "self-defense argument revolved

---

[3] **See** Pa.R.Crim.P. 907(1).

around the victim being strong enough to run at him and attempt to scratch his eyes, unprovoked, but still fragile enough to fall down and break her leg." (PCRA Court Opinion, 9/29/21, at 14). The court stated that after considering Hardaway's medical records and Brown's argument at the hearing, it found Brown's "version of events unconvincing and not supported by the available record." (*Id.* at 15).

## II.

## A.

On appeal, Brown contends that trial counsel was ineffective with regard to cross-examination of Hardaway.[4] He maintains that Attorney Berryman failed to "establish and prove the most important fact of this criminal case. Which is the fact that this alleged assault never actually happened because it is absolutely impossible for it to have actually occurred in the real world." (Brown's Brief, at 3-4) (emphasis omitted). Brown concedes that Attorney Berryman did establish for the record that Hardaway sustained no head or facial injuries, but he nonetheless claims that counsel "made absolutely no

_____

[4] Our review of a PCRA court's decision is limited to examining whether its findings of fact are supported by the record and whether its conclusions of law are free from legal error. *See Commonwealth v. Wiggins*, 248 A.3d 1285, 1288 (Pa. Super. 2021), *appeal denied*, 263 A.3d 546 (Pa. 2021). "We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party." *Id.* (citation omitted). We are bound by the PCRA court's credibility determinations when they are supported by the record. *See Commonwealth v. Medina*, 92 A.3d 1210, 1214 (Pa. Super. 2014) (*en banc*).

effort" to disprove the "fictitious assault." (*Id.* at 5). Brown emphasizes that Hardaway's allegation that he slammed her head into a wall was not credible given her obvious frailty, advanced age and the lack of medical evidence of injury to her head. (*See id.* at 6-10). Brown further posits that the PCRA court based its ruling on "unreal and imaginary evidence [of facial wounds] instead of on the legitimate, factual and scientific evidence" in this case. (*Id.* at 12-13).[5]

**B.**

We begin by noting that "counsel is presumed effective, and an appellant has the burden of proving otherwise." *Wiggins*, *supra* at 1288 (citation omitted). When asserting a claim of ineffective assistance of counsel, a petitioner must demonstrate: "(1) the underlying claim has arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." *Commonwealth v. Davis*, 262 A.3d 589, 595 (Pa. Super. 2021) (citation

_____

[5] Brown's brief does not comply with our Rules of Appellate Procedure in that it does not include the required content nor does he support his argument with discussion of relevant legal authority or citation to the record. (*See* Pa.R.A.P. 2116-2119 (requiring appellant to set forth, *e.g.*, a statement of the questions involved and summary of the argument)). Although we could quash this appeal for this defect, *see* Pa.R.A.P. 2101, we decline to do so in the interest of judicial economy.

- 8 -

omitted). A petitioner's failure to satisfy any prong of this test will cause his claim to fail. *See id.*

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit." *Id.* at 596 (citation omitted). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Id.* (citation omitted).

In the instant case, the PCRA court found Brown's ineffectiveness claim meritless and explained:

Attorney Berryman attempted to tactfully discredit the testimony from the victim . . . [and] cross-examined the victim carefully to expose the discrepancies in the victim's testimony without outright accusing the victim of lying. Due to the fact that the victim was a 74-year-old woman who was hospitalized as a result of Appellant's assault, aggressive cross-examination of the victim would likely have painted the victim in a more sympathetic light, something that would have hurt Appellant at trial.

. . . [A]ny cross-examination conducted on the victim needed to be done carefully in order to bring out the inconsistencies of her testimony without attacking an obviously vulnerable individual who had already testified to having developed memory problems as a result of the assault. The fact that the victim testified to having memory problems could easily account for inconsistencies in her testimony . . . Attorney Berryman made copious use of the notes of testimony from the preliminary hearing . . . [and] was able to walk a fine line between calling the victim's testimony into question and attacking the victim . . .

[A]lthough Appellant alleged that Attorney Berryman provided ineffective representation, Appellant outright failed to address that Attorney Berryman was not his only attorney in this matter . . . [I]t would appear to this court that had Attorney Berryman's cross-examination been insufficient, Attorney [Greg]

- 9 -

Blender would have taken steps to cover any questioning that Attorney Berryman failed to ask. The very fact that Appellant had the benefit of two competent attorneys undercuts his claim of ineffectiveness based on the cross-examination of the victim.

(PCRA Ct. Op., at 9-12).

We agree with the PCRA court's assessment, as the record plainly reflects that Attorney Berryman **did** thoroughly cross-examine Hardaway and elicited testimony indicating that she did not receive any cuts, lacerations or bleeding from her head. Counsel also tested the reliability of Hardaway's testimony as a whole through questioning her about her considerable memory issues. Additionally, during closing argument, Attorney Berryman highlighted that Hardaway's medical records showing no head injuries do not support her version of events, and she also strenuously argued that the evidence instead supports Brown's self-defense claim. (**See** N.T. Trial, at 57-58). Thus, the record flatly negates Brown's claim that Attorney Berryman did not zealously act on his behalf and instead shows that she walked a tightrope between carefully cross-examining Hardaway to expose inconsistencies and outright antagonizing her, given her significant memory loss concerning her police statement/preliminary hearing testimony and her age/physical frailty. Brown's proposed tactic of a more aggressive line of questioning of Hardaway simply lacks arguable merit under the circumstances of this case. **See Davis**, **supra** at 596.

As discussed, despite counsel's efforts at trial, the PCRA court found Brown's position not credible in view of the serious injury Hardaway sustained,

- 10 -

the age/size differential between Brown and the victim, and the fact that Brown simultaneously and contradictorily maintained that Hardaway had enough strength to charge at him three times while hitting him, but was injured only because she was extremely brittle and weak.

In sum, viewing the evidence of record in the light most favorable to the Commonwealth as the prevailing party and giving the PCRA court's credibility determinations appropriate deference, we agree with its conclusion that Brown's ineffective assistance of counsel claim does not merit relief. **See Wiggins**, **supra** at 1288; **Medina**, **supra** at 1214. We affirm the order of the PCRA court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2022